# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 13-20572-TLM |
| GERALD WAYNE MILLER and ) | |
| CYNTHIA A. BOUDREAU, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| RODNEY HEATON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 13-07046-TLM |
| ) | |
| CYNTHIA A. BOUDREAU, an ) | |
| individual, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION
_____

On May 28, 2013, Debtors Gerald Wayne Miller and Cynthia Boudreau filed a voluntary chapter 7 bankruptcy petition, commencing the underlying bankruptcy case, Case No. 13-20572-TLM.[1] Creditor Rodney Heaton ("Plaintiff") filed a proof of claim for $82,462.08, Claim No. 2-1, based on a 2012 amended

---

[1] Unless otherwise indicated, all chapter, section and statutory references are to the Bankruptcy Code, Title 11, U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure 1001–9037.

MEMORANDUM OF DECISION - 1

judgment for $79,274.61 from Idaho's First Judicial District Court in Bonner County.[2] No one has objected to that proof of claim.[3]

Debtors and Plaintiff stipulated to extend the deadline for filing an adversary proceeding seeking to deny Debtors' discharge under § 727 until December 22, 2013. *See* Case No. 13-20572-TLM, Doc. No. 41. On December 20, 2013, Plaintiff timely filed the now pending adversary proceeding, Case. No. 13-07046-TLM.

Plaintiff's complaint was filed *pro se* and seeks to deny the discharge of debtor Cynthia Boudreau ("Defendant") under § 727(a)(2)(A) and § 727(a)(3).[4] The complaint alleges that after Plaintiff's pre-petition garnishment of Defendant's paycheck occurred, Defendant and her employer agreed that she

---

[2] The Court has taken judicial notice of its files and records in both this adversary proceeding and the underlying bankruptcy case in order to provide procedural background and context, and to fill gaps in the evidence presented at trial. *See* Fed. R. Evid. 201. Debtors' assertions in their sworn schedules and statements may be treated as evidentiary admissions under Fed. R. Evid. 801(d)(2). *See, e.g.*, *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 444 n. 32 (Bankr. D. Idaho 2008); *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 62 n. 16 (Bankr. D. Idaho 2008).

[3] In April 2014, the Court entered an order approving the chapter 7 trustee's final report and account in what turned out to be a minimal asset case. The trustee collected receipts in the case totaling only $1,448.48 and, after payment of administrative expenses, distributed $775.26 to the IRS and two unsecured creditors, including $133.41 to Plaintiff on his claim.

[4] Attorney Jonathon Frantz filed Plaintiff's proof of claim, and also filed an earlier adversary proceeding on Plaintiff's behalf, Case No. 13-07045-TLM. The Court dismissed that case because Mr. Frantz explained the complaint had been filed by his office in error, in that Plaintiff decided to represent himself. The complaints in the two adversary proceedings are nearly identical.

MEMORANDUM OF DECISION - 2

would be paid some of her wages "under the table" (in cash), reducing her documented or reported income to a level that would avoid Plaintiff's garnishment, and that Defendant was so compensated until she quit that job post-petition. Thus, Plaintiff argues, Defendant concealed property in order to hinder, delay, or defraud him within one year of filing for bankruptcy pursuant to § 727(a)(2)(A). Plaintiff also alleges that because Defendant falsified her employment records, she should also be denied her discharge under § 727(a)(3).

The case was tried on June 30, 2014. Both parties appeared *pro se*.[5] This Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rules 7052 and 9014.

## BACKGROUND AND FACTS

### A. Defendant's employment

Defendant worked for KKJ's Pizza Place ("KKJ's") from January 2007 until September 2013. She testified she generally worked from between 9:00 am

---

[5] Throughout this proceeding, the Court has followed the recognized standards applicable to *pro se* parties. For instance, while the Court makes "reasonable allowances" for *pro se* litigants and construes their pleadings and papers liberally, *see, e.g.*, *Hyatt v. Hyatt (In re Hyatt)*, 2011 WL 6179267 at *4 (Bankr. D. Idaho Dec. 13, 2011), it is still the *pro se* litigant's burden to establish a proper legal basis for any relief sought or defense raised, and to follow the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, *see, e.g.*, *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 781 n.2 (9th Cir. BAP 2000) ("*Pro se* appellants are accorded some leeway, but cannot ignore the Code and Rules, and the rules of this court."). And, as always, the Court must be and has been careful not to act as either of the *pro se* litigants' advocate. *See, e.g.*, *Jones v. Dole Food Co., Inc.*, 827 F. Supp. 2d 532, 536 (W.D.N.C. 2011), *aff'd* 473 F. App'x 270 (4th Cir. 2012).

MEMORANDUM OF DECISION - 3

and 10:00 am until between 3:00 pm and 4:00 pm, Monday through Friday.  She also testified she sometimes spent time at KKJ's outside her normal working hours because she was carpooling with her son, who also worked at KKJ's on a different schedule.  And she testified she occasionally "volunteered" by working for KKJ's without pay outside her normal hours.

Although Plaintiff called two witnesses in an attempt to impeach Defendant's testimony, the impeachment was ineffective.[6]  Timothy Sorahan testified he often saw Defendant at KKJ's "after 10 am."  James Rindel testified he ate at KKJ's up to four times a week, and would see Defendant there "after 10 am."  Plaintiff's questions effectively elicited answers *supporting* Defendant's testimony that she worked from 9:00 or 10:00 in the morning until 3:00 or 4:00 in the afternoon.  While Rindel also testified that he occasionally saw Defendant working there in the evenings when he would stop by for dinner or to rent a movie, Defendant explained she was either waiting for her son who also worked there, or just visiting, or occasionally volunteering her time to help the owners.  While the testimony of all witnesses could have been clearer, Defendant's testimony about her work hours and her other appearances at KKJ's at other times

---

[6]  In addition to these witnesses, Plaintiff unsuccessfully attempted to introduce certain exhibits regarding Defendant's compensation from KKJ's.  Exhibit Nos. 112–113 (affidavit of Caroline O'Keeffe) were excluded as hearsay pursuant to Fed. R. Evid. 801–802.  Exhibit Nos. 114–116 (notes from Laura) were also excluded on the basis of hearsay, and because they lacked the foundation required for authentication under Fed. R. Evid. 901.

was not effectively impeached.

The Court's examination of Defendant's paystubs from KKJ's, Ex. Nos. 118–141, finds the same to be consistent with Defendant's testimony. Defendant was paid twice monthly. The pay stubs include all but one of the pay periods during the year prior to filing.[7] They show Defendant worked approximately 30 hours per week, sometimes a little more, sometimes a little less.[8] This comports with her testimony that she worked about six hours per day (from 10:00 am to 4:00 pm), five days per week (Monday through Friday). It is also consistent with Defendant's reported current monthly gross wages on schedule I.[9]

At the end of the day, Plaintiff had effectively elicited no testimony or other evidence supporting his suspicions and allegations that Defendant and her employer had cut a deal to pay her under the table and to falsify her employment records. This was the lynchpin of the claims raised under § 727(a)(2)(A) and § 727(a)(3).

---

[7] The exhibits did not include a pay stub for the period of December 16–31, 2012. Additionally, there were two pay stubs of different amounts listed for the pay period of January 1, 2013 to January 14, 2013. Ex. Nos. 132, 133. One of them was paid on January 21, and the other on February 5, indicating the pay period dates on the second were a typo.

[8] The pay stubs average 58.6 hours worked per pay period, with the pay periods generally lasting 15 or 16 days. The most Defendant worked in a pay period was 73.5 hours, the least was 46.5 hours.

[9] Defendant's schedule I and amended schedule I each said she made gross wages of approximately $906.26 per month. *See* Case. No. 13-20572-TLM, Doc. No. 1 at 23, and Doc. No. 21 at 4. At her $7.25 hourly rate, that is 125 hours per month, or roughly 30 hours per week.

MEMORANDUM OF DECISION - 5

### B.     Other evidence

Plaintiff also presented testimony and other evidence about matters not directly related to Defendant's employment.  He testified about his relationship with Defendant, which began in 1994.  He also testified about the sales of several horses by the two of them in 2006.  *See* Ex. Nos. 100–105 (jointly signed bills of sale).

He also testified about his purchase of a property on Brunner Road in Athol, Idaho in 1996.  *See* Ex. No. 110 (warranty deed showing Plaintiff obtained title).  Plaintiff indicates that, though they originally bought this property in his name, he transferred the title into Defendant's name due to his then-existing disputes with the IRS.  *See* Ex. No. 109 (warranty deed showing transfer of title from Plaintiff to Defendant).  Subsequently, Plaintiff and Defendant decided to sell the Brunner Road property in order to purchase certain property on Cocolalla Lake, in Idaho.[10]  Defendant later obtained and served Plaintiff with a restraining order keeping him off the Cocolalla Lake property.  Defendant eventually sold that property and, according to her testimony, paid off the loan on the property, the outstanding cost of improvements to the property, and her parents' alleged

---

[10] The evidence and testimony did not clarify whether the parties jointly held title to the Cocalalla Lake property, or if it was in Defendant's name.  Ultimately, that fact is irrelevant to these proceedings.

MEMORANDUM OF DECISION - 6

contribution to those improvements.[11]

While these factual matters provide background and context for the current dispute, they ultimately are immaterial to the allegations raised in the complaint. Those allegations relate to the alleged concealment of wages by Defendant, and the alleged falsification of her employment records. While Plaintiff's testimony about these facts could be an attempt to establish that he was Defendant's creditor, that fact was adequately established by his judgment and uncontested proof of claim.[12] And if the testimony was intended or could be construed to suggest Plaintiff had a claim that Defendant's judgment debt should be held to be non-dischargeable under § 523(a), not only was such a claim not pleaded, it is time-barred.[13] Because these facts do not relate directly to the claims at issue in this case, the Court will not discuss them further.

---

[11] Plaintiff has several issues with Defendant over the course of events related to his ouster from this property and its eventual sale, including an obvious dispute over whether Defendant's parents loaned any money toward improvements and, consequently, whether they should have been reimbursed.

[12] A timely filed proof of claim is deemed allowed, unless a party in interest objects, and constitutes prima facie evidence of the validity and amount of the claim. *See* § 502(a); Rule 3001(f). No one has objected to Plaintiff's proof of claim, so it is deemed allowed.

[13] When the Court earlier approved a stipulation to extend the deadline to file a § 727 action, it specifically noted that the deadline for filing § 523 actions under Rule 4007(c) was not extended. *See* Case. No. 13-20572-TLM, Doc. No. 41. Thus while the § 727 claims were timely filed, any implied § 523 claim was not. Further, the Court cannot use its § 105 equitable authority to extend the Rule 4007 deadline after it has expired. *Anwar v. Johnson*, 720 F.3d 1183, 1187 (9th Cir. 2013).

MEMORANDUM OF DECISION - 7

**DISCUSSION AND DISPOSITION**

    **A.    Denial of discharge**

The basic requirements for denying a debtor's discharge are concisely stated in *Retz v. Samson (In re Retz)*, 606 F.3d 1189 (9th Cir. 2010):

> Those objecting to discharge "bear[ ] the burden of proving by a preponderance of the evidence that [the debtor's] discharge should be denied." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd,* 578 F.3d 1167, 1168 (9th Cir. 2009) (expressly adopting the BAP's statement of applicable law). "In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts should construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge." *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1281 (9th Cir. 1996).

*Id.* at 1196.

    **1.    Section 727(a)(2)(A)**

Defendant seeks to deny Plaintiff's discharge under § 727(a)(2)(A). "A party seeking denial of discharge under § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property.'" *Retz*, 606 F.3d at 1200 (quoting *Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240 (9th Cir. 1997)).[14]

Here, Plaintiff alleged KKJ paid Defendant in cash to reduce her reported

---

[14] Section 727(a)(2)(A), which is at issue here, differs from § 727(a)(2)(B) in that the former addresses transfer of property of the debtor within the year preceding bankruptcy and the latter transfer of property of the estate by the debtor after bankruptcy.

MEMORANDUM OF DECISION - 8

income and avoid his garnishment of her wages.  But Plaintiff presented inadequate evidence to support that allegation.  Defendant's testimony about the hours she worked at KKJ was clear, and her credibility was not effectively impeached.  It was also corroborated by Rindel and Sorahan, who testified they saw her at KKJ during those hours.  The other hours when she was seen at KKJ's were explained by her testimony about waiting to carpool with her son and working without compensation.  Defendant's testimony was also consistent with both her pay statements, and Debtors' schedule of income and expenses as filed in the chapter 7 case.  Simply put, no evidence, and certainly no preponderating evidence, was presented establishing concealment of wages or any other "disposition of property" as required under § 727(a)(2).

Because Plaintiff failed to establish that Defendant concealed any property, the Court need not analyze the intent prong of § 727(a)(2).  Plaintiff's § 727(a)(2)(A) cause of action will be dismissed.

### 2.     Section 727(a)(3)

Plaintiff also seeks to deny Defendant's discharge under § 727(a)(3) for allegedly falsifying her employment records.  "A creditor states a prima facie case under § 727(a)(3) by showing (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Caneva v. Sun Cmtys. Operating Ltd. P'ship. (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008)

MEMORANDUM OF DECISION - 9

(quoting *Lansdowne v. Cox (In re Cox),* 41 F.3d 1294, 1296 (9th Cir. 1994)) (internal quotation marks omitted).

Here, Plaintiff failed to prove Defendant worked at KKJ's more than the hours reported on her time cards and, consequently, failed to establish she had falsified her employment records or otherwise "failed to maintain or preserve adequate records."

Indeed, the only possible inadequacy in Defendant's payroll records was her failure to provide her pay stub for the December 16 to December 31, 2012 time period. But that small omission is not enough to justify denying Defendant's discharge under the applicable law. "The statute does not require absolute completeness in making or keeping records. . . . Rather, the debtor must 'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'" *Caneva*, 550 F.3d at 761 (quoting *Rhoades v. Wikle,* 453 F.2d 51, 53 (9th Cir. 1971)).

Because Plaintiff did not establish that Defendant failed to preserve or maintain adequate records, the Court need not consider whether the alleged failure made it impossible to ascertain Defendant's financial condition. Defendant failed to prove the requisite elements for his § 727(a)(3) claim, and that claim will also be dismissed.

MEMORANDUM OF DECISION - 10

**CONCLUSION**

Based on the foregoing findings and conclusions, Plaintiff's Complaint against Defendant will be dismissed. The Court will enter a Judgment consistent with this Decision, and Debtors' discharge will be duly entered.

DATED: July 10, 2014

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE